**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**--------------------------------------------------------x**
**RONALD WHITEHORN and WILLIAM**
**AKROYD, on behalf of themselves and others**          CASE NO. 09-CV-1148 (LBS)
**similarly situated,**

                    **Plaintiffs,**

          **v.**

**WOLFGANG'S STEAKHOUSE, INC., ZMF**
**RESTAURANTS, LLC d/b/a WOLFGANG'S**
**STEAKHOUSE AT PARK AVENUE, WOLF**
**AT TRIBECA, INC. d/b/a WOLFGANG'S**
**STEAKHOUSE AT TRIBECA, PETER**
**ZWEINER and WOLFGANG ZWEINER**

                    **Defendants.**
**--------------------------------------------------------x**


**<u>PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR</u>**
**<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CONDITIONAL</u>**
**<u>CERTIFICATION OF THE SETTLEMENT CLASS, AND PROVIDING FOR NOTICE</u>**

Matthew Kadushin
Michael D. Palmer
JOSEPH & KIRSCHENBAUM LLP
233 Broadway, 5th Floor
New York, NY  10279
Phone:  (212) 688-5640
Fax:  (212) 688-2548
*Attorneys for Plaintiffs and*
*proposed settlement class members*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................iii

I.    INTRODUCTION ....................................................................................1

II.   BACKGROUND .....................................................................................2

      A.    Background .................................................................................2

      B.    Discovery ...................................................................................3

      C.    Motion Practice .........................................................................3

      D.    Settlement Negotiations .............................................................5

III.  SUMMARY OF SETTLEMENT TERMS.............................................5

      A.    The Settlement Fund ..................................................................6

      B.    The Release ................................................................................8

      C.    Attorneys' Fees And Costs And Class Representative Incentive Award ..............9

IV.   LEGAL ARGUMENT ..........................................................................10

      A.    Class Settlement Procedure......................................................10

      B.    The Class Should Be Conditionally Certified For Settlement Purposes................10

            1.    Plaintiff Has Met All Of The Prerequisites Under Rule 23(a)...................12

                  a.    Numerosity Is Satisfied....................................................12

                  b.    Commonality Is Satisfied.................................................12

                  c.    Typicality Is Satisfied .......................................................13

                  d.    Adequacy Is Satisfied ......................................................14

            2.    The Court Should Certify The Settlement Class Under Rule 23(b)(3)......15

                  a.    Common Questions Predominate .....................................15

                b.      A Class Action Is A Superior Method To Adjudicate This Matter .................................................................... 16

C.      The Court Should Appoint JK As Class Counsel ................................................ 16

D.      Preliminary Approval Of The Settlement Is Appropriate ..................................... 18

      1.      There Are No Grounds To Doubt The Fairness Of The Settlement Agreement, Which Is The Product Of Serious, Informed, Arm's-Length Negotiations .................................................................................. 19

      2.      The Settlement Contains No Obvious Deficiencies ................................. 21

      3.      The Settlement Falls Within The Range Of Possible Approval ............... 22

E.      The Proposed Plan of Class Notice .................................................................... 24

V.      CONCLUSION ................................................................................................................ 26

# TABLE OF AUTHORITIES

Page

<u>Cases</u>

*Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*,
      493 F.3d 100 (2d Cir. 2007)........................................................................................7

*Agofonova v. Nobu Corp.*,
      No. 07 Civ. 6926 (S.D.N.Y. Feb. 6, 2009) .......................................................17

*Amchem Prods. v. Windsor*,
      521 U.S. 591 (1997)..................................................................................................10

*Campos v. Goode*,
      10 Civ. 0224 (DF), 2011 U.S. Dist. LEXIS 22959
      (S.D.N.Y. Mar. 4, 2011) ..........................................................................7, 13, 16

*Castagna v. Madison Square Garden, L.P.*,
      09-CV-10211 (LTS) (HP), 2011 U.S. Dist. LEXIS 24885
      (S.D.N.Y. Feb. 8, 2011) ........................................................................... 15

*Chi Kong Leung v. Home Boy Rest.*,
      No. 07 Civ. 8779 (RJS) (DFE), 2009 U.S. Dist. LEXIS 12556
      (S.D.N.Y. Feb. 18, 2009). .......................................................................17

*Clark v. Ecolab, Inc.*,
      No.07 Civ. 8623 (PAC), No. 04 Civ. 4488 (PAC), No. 06 Civ. 5672 (PAC)
      2009 U.S. Dist. LEXIS 108736 (S.D.N.Y. Nov. 17, 2009)...............................20

*Cohen v. J.P. Morgan Chase & Co.*,
      262 F.R.D. 153 (E.D.N.Y. 2009) ......................................................................18

*Consolidated Rail Corp. v. Town of Hyde Park*,
      47 F.3d 473 (2d Cir. 1995).................................................................................12

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
      502 F.3d 91 (2d Cir. 2007)................................................................................16

*Daniels v. City of New York*,
      198 F.R.D. 409, 417 (S.D.N.Y. 2001) ...........................................................12

*Delaney v. Geisha NYC, LLC*,
      261 F.R.D. 55 (S.D.N.Y. 2009) .......................................................................17

*deMunecas v. Bold Food, LLC*,
    09 Civ. 00440 (DAB), 2010 U.S. Dist. LEXIS 87644
    (S.D.N.Y. Aug. 23, 2010) ................................................................................................16, 20

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006)................................................................................................14

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)...........................................................................................19, 23

*Dorn v. Eddington Sec.*,
    No. 08 Civ. 10271 (LTS), 2011 U.S. Dist. LEXIS 11931
    (S.D.N.Y. Jan. 20, 2011).....................................................................................................11

*Dupler v. Costco Wholesale Corp.*,
    705 F. Supp. 2d 231 (E.D.N.Y. 2010) ...............................................................................23

*Dziennik v. Sealift, Inc.*,
    No. 05 Civ. 4659, 2007 U.S. Dist. LEXIS 38701
    (E.D.N.Y. May 29, 2007) ...................................................................................................14

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)...........................................................................................................24

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005)................................................................................13, 19

*General Tel.  Co. of SW Falcon*,
    457 U.S. 147 (1982)...........................................................................................................12

*Gortat v. Capala Bros.*,
    07-CV-3629 (ILG), 2010 U.S. Dist. LEXIS 35451
    (E.D.N.Y. Apr. 9, 2010)......................................................................................................14

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...........................................................................................16

*In Iglesias-Mendoza v. La Belle Farm, Inc.*,
    *239 F.R.D. 363 (S.D.N.Y. 2007)* .................................................................................15

*In re AOL Time Warner, Inc.*,
    02 Civ. 8853 (SWK), 2006 U.S. Dist. LEXIS 70474
    (S.D.N.Y. Sept. 27, 2006) ..................................................................................................20

*In re. Drexel Burnham Lambert Group*,
    960 F.2d 285 (2d Cir. 1992)................................................................13

*In re. Initial Pub. Offering*,
    226 F.R.D 186 (S.D.N.Y. 2005) ...................................................10, 18

*In re. Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ....................................................20

*In re. Prudential Sec. Inc. Ltd. Pshps. Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) ...............................................18, 19

*In re. Visa Check/Mastermoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001)......................................................11, 15

*Joel A. v. Guiliani*,
    218 F.3d 132 (2d Cir. 2000).........................................................23

*Khait v. Whirlpool Corp.*,
    No. 06 Civ. 6381 (ALC), 2010 U.S. Dist. LEXIS 4067
    (E.D.N.Y. Jan. 20, 2010). .................................................... *passim*

*Lee v. ABC Carpet & Home*,
    236 F.R.D. 193 (S.D.N.Y. 2006) .................................................14

*Lewis v. Alert Ambulette Serv. Corp.*,
    No. 11-CV-442, 2012 U.S. Dist. LEXIS 6269
    (E.D.N.Y. Jan. 19, 2012) . ...........................................................13

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) .........................................23

*Marisol A. v. Guiliani*,
    126 F.3d 372 (2d Cir. 1997).........................................................13

*Martens v. Smith Barney Inc.*,
    181 F.R.D. 243 (S.D.N.Y. 1998) .................................................14

*Maywalt v. Parker & Parsley Petroleum Co.*,
    67 F.3d 1072 (2d Cir. 1998).........................................................11

*McBean v. City of New York*,
    228 F.R.D. 487 (S.D.N.Y. 2005) .................................................14

*McReynolds v. Richards-Cantave*,
    588 F.3d 790 (2d Cir. 2009)........................................................18

*Michael Milken & Assocs. Sec. Litig.,*
    150 F.R.D. 57 (S.D.N.Y. 1993) ...................................................................................25

*Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.),*
    471 F.3d 24 (2d Cir. 2006)...........................................................................................11

*Noble v. 93 University Place Corp.,*
    224 F.R.D. 330 (S.D.N.Y. 2004) .................................................................................12

*Pefanis v. Westway Diner, Inc.,*
    No. 08 Civ. 002 (S.D.N.Y. Aug. 7, 2009) ...................................................................17

*Ramirez v. Lovin' Oven Catering Suffolk, Inc.,*
    No. 11 Civ. 0520 (JLC), 2012 U.S. Dist. LEXIS 25060
    (S.D.N.Y. Feb. 24, 2012) .............................................................................................17

*Robidoux v. Celani,*
    987 F.2d 931 (2d Cir. 1993)........................................................................................14

*Sand v. Greenberg,*
    No. 08-cv-7840 (PAC), 2011 U.S. Dist. LEXIS 36266,
    (S.D.N.Y. Mar. 22, 2011) ............................................................................................17

*Saylor v. Lindley,*
    456 F.2d 896 (2d Cir. 1972)........................................................................................19

*Spicer v. Pier Sixty LLC,*
    269 F.R.D. 321 (S.D.N.Y. 2010) .................................................................................17

*Torres v. Gristede's Operating Corp.,*
    No. 04 Civ. 3316 (PAC), 08 Civ. 8531 (PAC), 08 Civ. 9627 (PAC),
    2010 U.S. Dist. LEXIS 75362 (S.D.N.Y. Jun. 1, 2010). ....................................2, 10, 11, 18

*Torres v. Gristede's Operating Corp.,*
    No. 04 Civ. 3316 (PAC), 08 Civ. 8531 (PAC), 08 Civ. 9627 (PAC),
    2010 U.S. Dist. LEXIS 139144 (S.D.N.Y. Dec. 21, 2010). .............................................21

*Toure v. Central Parking Sys.,*
    No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056
    (S.D.N.Y. Sept. 28, 2007)............................................................................................14

*Traffic Executive Ass'n,,*
    627 F.2d 631 (2d Cir. 1980).........................................................................................2

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
 396 F.3d 96 (2d Cir. 2005)....................................................................................18, 19, 24

*Whitehorn v. Wolfgang's Steakhouse, Inc.*,
 275 F.R.D. 193 (S.D.N.Y. 2011) .........................................................................1, 12, 17

*Willix v. Healthfirst, Inc.*,
 No. 07 Civ. 1143 (ENV)(RER), 2010 U.S. Dist. LEXIS 139137
 (E.D.N.Y. Nov. 12, 2010)...................................................................................11, 22, 25

*Willix v. Healthfirst, Inc.*,
 No. 07 Civ. 1143 (ENV)(RER), 2011 U.S. Dist. Lexis 21102
 (E.D.N.Y. Feb. 18, 2011)...................................................................................................21

*Wright v. Stern*,
 553 F. Supp. 2d 337 (S.D.N.Y. 2008)..............................................................................19

<u>Statues</u>

29 U.S.C. § 216(b) ....................................................................................................................8

<u>Rules</u>

Fed. R. Civ. P. 23................................................................................................... *passim*

Plaintiffs Ronald Whitehorn and William Akroyd ("Plaintiffs" or "Class Representatives"), on behalf of themselves and others similarly situated, respectfully submit this memorandum of law in support of their motion for preliminary approval of the Joint Stipulation of Settlement and Release, executed on or about April 22, 2013 ("Settlement Agreement").[1]

## I.   **INTRODUCTION**

Subject to Court approval, the Parties have agreed to settle this case for $446,500.00. The proposed settlement resolves the claims asserted in this action and satisfies all of the criteria for preliminary settlement approval under federal law.  Plaintiffs respectfully request that the Court (1) grant preliminary approval of the Settlement Agreement; (2) conditionally certify the settlement class under Fed. R. Civ. P. 23(b)(3) for settlement purposes only[2]; (3) appoint Joseph & Kirschenbaum LLP ("JK") as class counsel of the Settlement Class; (4) approve the Class Notice (attached as Exhibit A to the Settlement Agreement) and the plan for its distribution; (5) set a deadline of 90 from the date Court preliminary approves the settlement (60 days from the mailing of the Class Notice) for Settlement Class Members to object to the settlement or opt out of the settlement class; and (6) schedule a hearing ("Fairness Hearing") at which the Court will

---

[1]   Plaintiffs submit in support of their motion a Declaration of Matthew Kadushin ("Kadushin Decl."), attaching as Exhibit 1, a Proposed Order, and as Exhibit 2, a copy of the fully executed Joint Stipulation of Settlement and Release (the "Settlement Agreement") along with exhibits.  The exhibits to the Settlement Agreement are as follows:  Exhibit A is the Notice of Proposed Settlement of Class Action Lawsuit, Certification of State Law Class, and Fairness Hearing (the "Class Notice"); and Exhibit B is a "Cover Letter" that specifies as to each Settlement Class Member the relevant time period in which he was employed by Defendants and the Settlement Class Member's last held position during the Class Period.

[2]   As discussed *infra*, on July 20, 2011, the Court previously certified the Class and appointed Plaintiffs' Counsel as Class Counsel.  *See Whitehorn v. Wolfgang's Steakhouse*, 275 F.R.D. 193 (S.D.N.Y. 2011). However, given the history of the case, the Parties are requesting that the Court re-certify the case for purposes of this Settlement Agreement.

consider Plaintiffs' motion for final approval of the settlement, attorneys' fees and costs, and incentive award.

Preliminary approval and conditional class certification will allow the parties to notify the Settlement Class Members of the settlement and of their right to object to or opt out of the settlement.  Preliminary approval does not require the Court to rule on the ultimate fairness of the settlement, but to make an "initial evaluation" of the fairness of the proposed settlement and whether there is "probable cause" to submit it to the class members.  *See In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980).  "If, after a preliminary evaluation of the proposed settlement, the court finds that it 'appears to fall within the range of possible approval,' the court should order that the class members receive notice of the settlement."  *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316 (PAC), 08 Civ. 8531 (PAC), 08 Civ. 9627 (PAC), 2010 U.S. Dist. LEXIS 75362, at *11 (S.D.N.Y. Jun. 1, 2010) (citation omitted).

## II.   **BACKGROUND**

### A.   **Background**

On February 9, 2009, Plaintiff Ronald Whitehorn initiated this action by filing a complaint on behalf of himself and similarly situated individuals, alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") and New York Labor Law ("NYLL"). The Complaint was amended on or about July 12, 2010 and December 8, 2010, and Plaintiff William Akroyd was added as a named plaintiff.  (Collectively, the Complaint, amended complaints, and any filings arising there from, whether filed on behalf of Plaintiffs or Defendants, shall be referred to as the "Lawsuit").  (Settlement Agreement ¶¶ 10, 11.)

The Lawsuit alleged, *inter alia*, that Defendants committed violations of the NYLL and FLSA by (1) not properly paying tipped employees for all time worked, (2) failing to properly

pay tipped employees overtime for hours worked in excess of forty (40) in a week, (3) not paying tipped employees spread of hours pay when their workday lasted longer than ten hours, (4) failing to reimburse tipped employees for the cost of uniforms and requiring tipped employees to launder their uniforms while not paying the required premium, and (5) misappropriating tips from Defendants' servers.   The Lawsuit sought on behalf of Plaintiffs and other similarly situated individuals, among other things, allegedly unpaid wages, misappropriated tips, prejudgment interest, liquidated damages, and attorneys' fees and costs.  (Settlement Agreement ¶ 12.)

### B.    Discovery

During the pendency of the Lawsuit, the Parties and their counsel vigorously investigated the claims against Defendants.  As part of the investigation, the Plaintiffs served interrogatories and requests for the production of documents to which Defendants responded and produced extensive personnel and payroll documents.   Plaintiffs took the depositions of two of Defendants' owners, one of Defendants' managers, and Defendants' former bookkeeper.  Plaintiffs also obtained discovery through a subpoena of Defendants' payroll company.   JK further investigated the case through interviews with the Plaintiffs and putative class members.  Plaintiffs also responded to interrogatories and requests for the production of documents served by Defendants and appeared for depositions taken by Defendants.   In addition, Defendant's Counsel interviewed corporate representatives and reviewed and produced relevant records.  (Settlement Agreement ¶ 14.)

### C.    Motion Practice

On October 18, 2010, Plaintiffs moved for certification of an FLSA collective action and for Court Facilitation of Notice, which the Court granted on February 8, 2011.  After notice was

distributed to putative FLSA collective members, one individual, Marin Mesic, submitted a form consenting to sue Defendants under the FLSA. (Settlement Agreement ¶ 15.)

On December 2, 2010, Plaintiffs moved for Rule 23 class certification of their New York state law wage claims, and on July 2011, the Court certified the proposed Rule 23 class. (Settlement Agreement ¶ 16.)

Following disputes between the parties regarding the content of the Rule 23 class notice, on October 14, 2011, Plaintiffs filed a motion for Court approval of their proposed Rule 23 notice.  Shortly thereafter, Defendants filed a motion to decertify the FLSA collective action and remand Plaintiffs' pendent New York claims.  (Settlement Agreement ¶¶ 17, 18.)

On February 8, 2012, the Court issued an order approving Plaintiffs' Rule 23 notice in part and instructing Plaintiffs to make revisions in accordance with the Court's order.  Two weeks later, the Court ordered that Defendants' motion to decertify the FLSA collective action and remand the New York claims was unripe and denied the motion without prejudice. (Settlement Agreement ¶¶ 17, 18.)

JK mailed the Court-approved Rule 23 notice to putative class members on April 20, 2012.  However, based upon communications by putative class members and the receipt of a significant number of class exclusion requests, JK had concerns that Defendants were interfering with putative class members' free choice to participate in the class.  JK submitted letters to the Court seeking an emergency conference and requested that the Court invalidate the received exclusion forms.  The Court held an emergency conference on May 21, 2012. (Settlement Agreement ¶¶ 19, 20.)

On June 12, 2012, the Court invalidated the class exclusion requests and ordered JK to distribute a Court-approved letter to class members advising them of their rights.  Shortly

thereafter, Defendants moved for reconsideration of the Court's order and requested that the Court hold an evidentiary hearing on the invalidation of the exclusion requests.  The Court granted Defendants' motion, and an evidentiary hearing was held on September 18, 2012. (Settlement Agreement ¶¶ 21, 22.)

On September 18, 2012, at the conclusion of the hearing, the Court ordered the Parties to try to settle the case and to presume, as part of such negotiations, that the previously submitted class exclusion requests were invalid. (Settlement Agreement ¶ 23.)

### D.     Settlement Negotiations

On December 20, 2012, the Parties engaged in a mediation before an experienced, private mediator, Ruth D. Raisfeld, Esq.  Prior to the mediation, JK created detailed calculations of potential damages in the Lawsuit and produced a copy of the calculations to Defendants. (Settlement Agreement ¶ 24.)

After a full day of mediation in which the Parties vigorously debated the claims and potential damages, the Parties reached a tentative settlement, subject to approval and confirmation by the Court, and executed a Memorandum of Understanding.  (Settlement Agreement ¶¶ 25, 26.)

## III.    SUMMARY OF SETTLEMENT TERMS

The Settlement Class includes persons who worked for Defendants as servers, bartenders, bar-backs, or coat-check employees (collectively, "tipped employees") at the Wolfgang's Steakhouse restaurants at 4 Park Avenue ("Park Avenue Wolfgang's") and/or 409 Greenwich

Street ("Tribeca Wolfgang's") at any time between February 26, 2004[3] and December 20, 2012. (Settlement Agreement ¶ 5.)

### A.    The Settlement Fund

The total payment to be made by Defendants under this Settlement, including payments to be made to the Settlement Class, Class Representative, Class Counsel and Claims Administrator, is Four Hundred and Forty Six Thousand, Five Hundred Dollars and no cents ($446,500.00) (the "Gross Fund Value" or "GFV").  (Settlement Agreement ¶¶ 41, 52.)

The Parties have agreed that Kurzman Carson Consultants LLC will act as the claims administrator ("Claims Administrator").    (Settlement Agreement ¶ 9.)    The Claims Administrator will be responsible for mailing the Class Notice to Settlement Class Members, the claims administration process, and distributing the settlement checks. (Settlement Agreement ¶53.)   In that regard, within fifteen (15) days after the Court grants preliminary approval of the Settlement Agreement, Defendant will provide the Claims Administrator with the following information for each Settlement Class Member: (1) name, (2) last known address, (3) social security number, (4) date first employed at either the Park Avenue Wolfgang's or Tribeca Wolfgang's restaurant, (5) date last employed at Park Avenue Wolfgang's or Tribeca Wolfgang's, and (6) last position held at Park Avenue Wolfgang's or Tribeca Wolfgang's during the class period.  (Settlement Agreement ¶¶ 62-63.)  Within thirty (30) days after preliminary approval of the Settlement Agreement, the Claims Administrator will mail out the Class Notice and Cover Letter to all the Class Members.  (Settlement Agreement ¶ 64.)  Class Members will have 60 days from the mailing of the Class Notice (or 90 days from the preliminary approval of

---

[3]    The Park Avenue Wolfgang's opened on February 26, 2004.  Tribeca Wolfgang's opened on or about July 17, 2006.  (Settlement Agreement at 2, n.1.)

the Settlement) to object to or opt out of the Settlement Class.  (Settlement Agreement ¶¶ 68, 69.)

After the payment of attorneys' fees and costs, a small incentive award to the Class Representative, and the Claims Administrator's costs and fees, the Net Settlement Amount ("NSA") shall be distributed among all class members who have not opted-out of the Settlement Class on a *pro rata* basis determined by the length of time class members were employed by Defendant and the position that each class member held.  (Settlement Agreement ¶¶ 42, 45.)

The Claims Administrator will analyze Defendants' records and award each class member a set amount of points based upon the number of days s/he was employed during the Class Period, specific time period worked, and job position held.[4]  Each class member's *pro rata* share will then be determined by dividing each class member's points by the total points for *all* class members and then multiplying this fraction by the NSA.  In addition, each class member is guaranteed a minimum share of $50; accordingly, every class member – even those who worked less than a week – will receive at least $50.    (Settlement Agreement ¶ 45.)

Under the Settlement Agreement, Defendants will pay the full the Settlement Fund of Four Hundred and Forty Six Thousand, Five Hundred Dollars and no cents ($446,500.00) to the Claims Administrator no later than thirty (30) calendar days after the Court enters an order granting final approval of the Settlement (Settlement Agreement ¶ 55.)  Within fifteen (15) days

---

[4]   The settlement has been structured to consider class members' job position because employees who held certain job positions (*e.g.* servers) are alleged to have suffered greater losses than employees in other positions.  The settlement has also been structured to reflect changes made to Class Members' compensation throughout the class period.  For example, the owners at Defendants' restaurants did not take part in the servers' tip pools after September 2006.  In addition, in late 2009, Defendants began properly tracking the hours worked by each employee and paid the employees accordingly.

of the Settlement Effective Date, the Claims Administrator will mail the settlement checks to the class members.  (Settlement Agreement ¶ 56.)

### B.    The Release

In return for the above consideration, all Settlement Class Members who do not opt out of the Settlement Class and endorse/cash their settlement checks[5] will release and discharge the Defendants of and from all New York and federal wage claims that were alleged or could have been alleged in the Lawsuit for their time working at Park Avenue Wolfgang's and/or Tribeca Wolfgang', including without limitation, claims for federal minimum and overtime wages, state minimum and overtime wages, spread of hours damages, damages relating to state laws concerning uniform costs and laundering, illegal deductions from gratuities, and claims for frequency of payments, as well as all derivative claims for interest, attorneys' fees, costs and liquidated damages, arising at any point from February 26, 2004 until the date of preliminary approval of this settlement.  Settlement Class members will retain claims unrelated to their wage and hour claims.  (Settlement Agreement ¶ 76.)[6]

---

[5]  The Claims Administrator will insert on the back of each Settlement Check the following language:  "By depositing this check, I consent to be a party plaintiff in an action to collect unpaid wages under the FLSA, and I acknowledge and agree that I am bound by the Settlement in the class action *Whitehorn v. Wolfgang's Steakhouse, Inc.*"  The Parties agree that an endorsement of a Settlement Check by a Settlement Class Member will satisfy the consent requirements of 29 U.S.C. §216(b) of the FLSA.  (Settlement Agreement ¶ 58.)

[6]  Any Settlement Class Member who does not opt-out yet does not endorse/cash his settlement check will still be bound by the terms of the Settlement, although s/he will not be considered to have satisfied the consent requirements of 29 U.S.C. § 216(b) and will thus remain free to pursue to any rights s/he may have under the FLSA.  (*See* Settlement Agreement ¶ 75.)

### C.    Attorneys' Fees And Costs And Class Representative Incentive Award

JK will apply to the Court for the recovery of their costs incurred and an award of 33% of the settlement fund as attorneys' fees.[7] (Settlement Agreement ¶ 49.)  The Court need not rule on fees and costs now.  JK will file a formal motion for approval of fees and costs along with their motion for final approval of the settlement.[8]

Plaintiffs/Class Representatives Ronald Whitehorn and William Akroyd will apply for incentive awards totaling Fifteen Thousand Dollars ($15,000.00), in recognition of the services they rendered on behalf of the Class.  (Settlement Agreement ¶ 47.)  Such awards "are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation."  *Khait*, 2010 U.S. Dist. LEXIS 4067, at *26.  Plaintiffs will make this motion simultaneously with Plaintiffs' motion for final approval of the Settlement Agreement.

Both the application for attorneys' fees and the application for an incentive award are separate from the approval of the Settlement Agreement, and will be fully briefed prior to final approval of the settlement.  (Settlement Agreement ¶¶ 48, 51.)  Thus, the Court need not decide those issues now.

---

[7]    One-third of the settlement fund is "'consistent with the norms of class litigation in this circuit.'"  *Campos v. Goode*, 10 Civ. 0224 (DF), 2011 U.S. Dist. LEXIS 22959, at *20 (S.D.N.Y. Mar. 4, 2011) (citation omitted).  *See also Khait v. Whirlpool Corp.,* No. 06 Civ. 6381 (ALC), 2010 U.S. Dist. LEXIS 4067, at *24-25 (E.D.N.Y. Jan. 20, 2010) ("Class Counsel risked time, effort, advanced costs, and expenses, with no ultimate guarantee of compensation. A percentage-of-recovery fee award of 33% is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany* [493 F.3d 100 (2d Cir. 2007)]. . . .)

[8]    At the same time, Plaintiff will apply for an award of Settlement Administration costs for the Claims Administrator.  (Settlement Agreement ¶ 52.)

## IV.   LEGAL ARGUMENT

### A.   Class Settlement Procedure

Fed. R. Civ. P. 23(e) requires judicial approval for any compromise of claims brought on a class basis.  Judicial proceedings under Fed. R. Civ. P. 23 ("Rule 23") have established a defined procedure and specific criteria for settlement approval in class action settlements.  There are four necessary steps:

> (1)   Certifying the class for settlement purposes;
>
> (2)   Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval and certification of settlement classes;
>
> (3)   Dissemination of mailed and/or published notice of settlement to all affected Class members; and
>
> (4)   A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See Khait,* 2010 U.S. Dist. LEXIS 4067 at \*4; *In re Initial Pub. Offering,* 226 F.R.D 186, 191 (S.D.N.Y. 2005).  These procedures safeguard class members' procedural due process rights and enable the court to fulfill its role as the guardian of class interests.  *Torres*, 2010 U.S. Dist. LEXIS 75362 at \*9-10.

With this motion, Plaintiffs request that the Court take the first three steps in the settlement approval process by certifying the class for settlement purposes and granting preliminary approval of the Settlement Agreement, approving the Class Notice, and authorizing distribution of the Class Notice.

### B.   The Class Should Be Conditionally Certified For Settlement Purposes.

Prior to granting preliminary approval of a settlement, district courts determine whether the proposed settlement class is a proper class for settlement purposes.  *See Amchem Prods. v.*

*Windsor,* 521 U.S. 591, 620 (1997) (explaining that courts should examine whether the proposed class would be adequately represented and fairly treated by a class action settlement). Conditional settlement approval, class certification, and appointment of class counsel have practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed settlement agreement, and setting the date and time of the final approval hearing. *Dorn v. Eddington Sec.*, No. 08 Civ. 10271 (LTS), 2011 U.S. Dist. LEXIS 11931, at *3 (S.D.N.Y. Jan. 20, 2011).

The Court may certify a class where a plaintiff demonstrates that the proposed class and proposed class representative meet the prerequisites of Rule 23(a) -- numerosity, commonality, typicality, and adequacy of representation -- and one of the three requirements of Rule 23(b). Fed. R. Civ. P. 23; *In re Visa Check/Mastermoney Antitrust Litig.,* 280 F.3d 124, 132-33 (2d Cir 2001), *abrogated on other grounds by Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*, 471 F.3d 24 (2d Cir. 2006). Here, Plaintiffs seek certification under Rule 23(b)(3), which requires that "questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The Court has great discretion in determining whether to certify a class. *Maywalt v. Parker & Parsley Petroleum Co*., 67 F.3d 1072, 1079 (2d Cir. 1998). *See Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143 (ENV)(RER), 2010 U.S. Dist. LEXIS 139137 at *5-6 (E.D.N.Y. Nov. 12, 2010). However, in exercising this discretion, courts should give "proper deference to the private consensual decision of the parties." *Torres*, 2010 U.S. Dist. LEXIS 75362 at *10 (citation omitted).

Plaintiffs also seek certification of the settlement collective pursuant to the FLSA, 29 U.S.C. § 216(b).  For the reasons set forth below supporting commonality and typicality, putative class members are clearly "similarly situated"; accordingly, an FLSA collective action should be certified for settlement purposes.

### 1.      Plaintiff Has Met All Of The Prerequisites Under Rule 23(a).

Plaintiff has satisfied the numerosity, commonality, typicality, and adequacy of representation requirements under Rule 23(a).  *See Whitehorn*, 275 F.R.D. at 198-201 (certifying Rule 23 class).

### a.      Numerosity Is Satisfied.

The parties estimate that the Class includes approximately 130 members.  (Kadushin Decl. ¶ 7.)  Thus, the Class is so numerous that joinder of all Class Members is impracticable. *See Consolidated Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995) (holding that numerosity can be presumed at a level of 40 members).

### b.      Commonality Is Satisfied.

The proposed Class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Tel. Co. of SW v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  *See Daniels v. City of New York,* 198 F.R.D. 409, 417 (S.D.N.Y. 2001) ("The commonality requirement will be met if the named Plaintiffs share a common question of law or fact with the grievances of the prospective class.").

Here, there are several questions of law and fact common to the Settlement Class in this case, including: (1) Whether Defendants' method of compensating class members a set amount of hours per shift satisfied the New York minimum wage law and overtime law; (2) Whether Defendants paid class members the New York State "Spread of Hours" pay on days when they

worked more than ten hours; and (3) Whether Defendants illegally retained portions of servers'
tips.  Accordingly, the commonality factor is met.  *See Lewis v. Alert Ambulette Serv. Corp.*, No.
11-CV-442, 2012 U.S. Dist. LEXIS 6269, at *25 (E.D.N.Y. Jan. 19, 2012) ("In wage cases, the
commonality requirement is usually satisfied where the plaintiffs allege that defendants had a
common policy or practice of unlawful labor practices."); *Noble v. 93 University Place Corp.*,
224 F.R.D. 330, 343 (S.D.N.Y. 2004) ("All potential class members are alleged to have been
harmed by a common practice—defendants' failure to adequately compensate employees for
overtime hours. The legal theory set forth in [Plaintiff's] Complaint is common to all class
members—that this alleged failure to pay overtime violates New York's labor law. Accordingly,
the commonality requirement is satisfied.").

### c.  Typicality Is Satisfied.

Typicality is also satisfied.  "Like the commonality requirement, typicality does not
require the representative party's claims to be identical to those of all class members."  *Frank v.
Eastman Kodak Co.*, 228 F.R.D. 174, 182 (W.D.N.Y. 2005).  Typicality is satisfied "when each
class member's claim arises from the same course of events, and each class member makes
similar legal arguments to prove the defendant's liability."  *Marisol A. v. Giuliani*, 126 F.3d 372,
376 (2d Cir. 1997) (quoting, *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir.
1992)) (internal quotation marks omitted).  *See, e.g. Campos*, 2011 U.S. Dist. LEXIS 22959, at
*6-7 (finding typicality met because "[t]he named plaintiffs suffered the same alleged injury as
did the class members – Defendants' [alleged violation of the NYLL]" and "because Plaintiffs'
claims arise from the same factual and legal circumstances that form the bases of the Class
Members' claims").  "Minor variations in the fact patterns underlying individual claims" do not
defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiff

13

and the class.  *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993); *Gortat v. Capala Bros.*, 07-CV-3629 (ILG), 2010 U.S. Dist. LEXIS 35451, at *13 (E.D.N.Y. Apr. 9, 2010).

Here, typicality is satisfied because the Plaintiffs were subject to the same payroll practices and tip practices as the class members. As the "Plaintiff[s] and the prospective class were subject to the same general employment scheme", Rule 23(a)(3) is satisfied.  *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 204 (S.D.N.Y. 2006).

### d.   Adequacy Is Satisfied.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement exists to ensure that the class representatives will have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members." *Toure v. Central Parking Sys.*, No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056, at *18-19 (S.D.N.Y. Sept. 28, 2007) (quoting, *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)) (internal quotation marks omitted).  "'[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.'"  *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 U.S. Dist. LEXIS 38701, at *19 (E.D.N.Y. May 29, 2007) (quoting, *Martens v. Smith Barney Inc.*, 181 F.R.D. 243, 259 (S.D.N.Y. 1998)).

Here, Plaintiffs Ronald Whitehorn and William Akroyd are adequate representatives of the proposed Class.  They have fairly, adequately and vigorously represented the class and assisted JK in prosecuting the action and obtaining the settlement.  Further, there is no indication here that the Plaintiffs and the Class Members' interests are at odds.  (Kadushin Decl. ¶ 10.) Accordingly, adequacy is satisfied.

### 2.      The Court Should Certify The Settlement Class Under Rule 23(b)(3).

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623.  Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality."  *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

In sum, the Class is suitable for certification, and the Court should certify the Class pursuant to Rule 23(b)(3), for purposes of granting preliminary approval of the Settlement Agreement.

### a.      Common Questions Predominate.

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof."  *In re Visa Check/MasterMoney*, 280 F.3d at 136.  Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied.  *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Plaintiffs challenge certain common policies and procedures of Defendants that resulted in individuals not being fully paid for all of their hours worked or properly compensated under the law.  Common issues regarding whether class members were not paid appropriately "are about the most perfect questions for class treatment." *Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 373 (S.D.N.Y. 2007)*; *Castagna v. Madison Square Garden, L.P.*, 09-CV-10211 (LTS)(HP), 2011 U.S. Dist. LEXIS 24885, at *4-5 (S.D.N.Y. Feb. 8, 2011) ("Common factual

allegations — that Defendant failed to pay Class Members for all overtime they worked - and a common legal theory — that Defendant violated the FLSA and NY Labor Law - predominate over any factual or legal variations among class members."); *deMunecas v. Bold Food, LLC*, 09 Civ. 00440 (DAB), 2010 U.S. Dist. LEXIS 87644, at *7-8 (S.D.N.Y. Aug. 23, 2010) (same).

> ### b.    A Class Action Is A Superior Method To Adjudicate This Matter.

Rule 23(b)(3)'s second part analyzes whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). *See also Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions, and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).

A class action "is more efficient for class members, particularly those who lack the resources to bring their claims individually." *Campos*, 2011 U.S. Dist. LEXIS 22959, at *8. JK is unaware of any individual lawsuits that have been filed by Class Members arising from the same allegations. (Kadushin Decl. ¶ 9.) Employing the class device here will achieve economies of scale for putative Class Members, conserve judicial resources, and preserve public confidence in the system by avoiding repetitive proceedings and preventing inconsistent adjudications. *Campos*, 2011 U.S. Dist. LEXIS 22959 at *8. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998) (individual actions for relatively small claims would result in less "settlement leverage, significantly reduced resources and no greater prospect for recovery").

> ### C.    The Court Should Appoint JK As Class Counsel.

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(A), (B). In

making this determination, the Court must consider counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class.  Fed. R. Civ. P. 23(g)(1)(C).

JK meets all relevant criteria. They did substantial work identifying, investigating, prosecuting, and settling the claims; have substantial experience prosecuting and settling wage and hour class actions; are well-versed in wage and hour and class action law; and are well-qualified to represent the interests of the class.  Courts – including this one – have repeatedly found JK to be adequate class counsel in wage and hour class actions.  *See, e.g. Whitehorn*, 275 F.R.D. at 200 (S.D.N.Y. 2011) ("There is no dispute that [JK] are qualified and experienced in class action law and wage and employment litigation in New York."); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 0520 (JLC), 2012 U.S. Dist. LEXIS 25060, at *10 (S.D.N.Y. Feb. 24, 2012) ("[JK] have significant experience prosecuting and settling wage and hour class actions, and are well-versed in both wage and hour and class action law.") *Sand v. Greenberg*, 08-cv-7840 (PAC), 2011 U.S. Dist. LEXIS 36266, at *6 (S.D.N.Y. Mar. 22, 2011) ("Plaintiffs' counsel, . . . Joseph, Herzfeld, Hester & Kirschenbaum, LLP . . ., have a record of competent and successful prosecution of large wage and hour class actions, and the attorneys working on this case are competent and experienced."). *See also e.g., Spicer v. Pier Sixty LLC*, 269 F.R.D. 321 (S.D.N.Y. 2010); *Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55 (S.D.N.Y. 2009); *Pefanis v. Westway Diner, Inc.*, No. 08 Civ. 002 (S.D.N.Y. Aug. 7, 2009); *Agofonova v. Nobu Corp.*, No. 07 Civ. 6926 (S.D.N.Y. Feb. 6, 2009); *Chi Kong Leung v. Home Boy Rest.*, No. 07 Civ. 8779 (RJS) (DFE), 2009 U.S. Dist. LEXIS 12556 (S.D.N.Y. Feb. 18, 2009).

Therefore, the Court should appoint the undersigned to serve as counsel for the Class pursuant to Rule 23(g).

### D.      Preliminary Approval Of The Settlement Is Appropriate.

There is a strong preference in the law for the resolution of class action litigation through settlement.  *See McReynolds v. Richards-Cantave,* 588 F.3d 790, 803 (2d Cir. 2009); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116-17 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context"); *Cohen v. J.P. Morgan Chase & Co*., 262 F.R.D. 153, 157 (E.D.N.Y. 2009) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.") (citations omitted).

Preliminary approval is the first step in the settlement process.  It simply allows notice to issue to the class and for class members to object or opt out of the settlement.  After the notice period, the Court will be able to evaluate the settlement with the benefit of the class members' input at a fairness hearing.  The fairness hearing affords class members "an opportunity to present their views of the proposed settlement."  *In re Initial Public Offering,* 226 F.R.D. at 191. Accordingly, a district court reserves its ultimate determination of whether a proposed settlement is fair, reasonable, and adequate for the final approval stage, after notice of the settlement has been given to the class members, and they have had an opportunity to voice their views of the settlement or to exclude themselves from the settlement.  *In re Prudential Sec. Inc. Ltd. Pshps. Litig*., 163 F.R.D. 200, 210 (S.D.N.Y. 1995) (noting that the court can better evaluate the fairness of the settlement "at the fairness hearing, where it can consider the submissions by proponents and potential opponents of the settlement and the reaction of the Class Members.")

 "Preliminary approval requires only an 'initial evaluation' of the fairness of the proposed settlement on the basis of written submissions and informal presentation by the settling parties." *Torres*, 2010 U.S. Dist. LEXIS 75362 at *10-11.  "Fairness is determined upon review of both

the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank*, 228 F.R.D. at 184. "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *Khait*, 2010 U.S. Dist. LEXIS 4067 at *13 (same). Consequently, when evaluating a settlement agreement, the court is not to substitute its judgment for that of the parties, nor is it to turn consideration of the adequacy of the settlement 'into a trial or a rehearsal of the trial.'" *Wright v. Stern*, 553 F. Supp. 2d 337, 343-344 (S.D.N.Y. 2008) (quoting, *Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974)). *See also Saylor v. Lindley,* 456 F.2d 896, 904 (2d Cir. 1972) ("[S]ince the very purpose of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation, the court must not turn the settlement hearing into a trial or a rehearsal of the trial; and that the court is concerned with the likelihood of success or failure and ought, therefore, to avoid any actual determination on the merits.") (internal citations omitted).

In deciding whether to grant preliminary approval, a court considers (1) whether there are any grounds to doubt the fairness of the settlement; (2) whether the settlement suffers from any "other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys"; and (3) whether the settlement "appears to fall within the range of possible approval . . ." *In re Prudential*, 163 F.R.D. at 209. The proposed settlement satisfies these requirements and should be preliminarily approved.

### 1. There Are No Grounds To Doubt The Fairness Of The Settlement Agreement, Which Is The Product Of Serious, Informed, Arm's-Length Negotiations.

The Settlement is the result of the diligent efforts and informed arm's-length negotiations among the settling parties. Defendant has asserted (and continues to assert) numerous defenses,

and has expressly denied any wrongdoing or legal liability arising out of the conduct alleged in this action.  The Parties both recognize the risks inherent in continuing this litigation, and that a trial in this action, and possible appeals, could take several years.  The Settlement confers substantial benefits upon the Class, and based upon their evaluation of the claims and legal and factual arguments and review of the discovery exchanged, JK has determined that the Settlement is in the best interests of the Class.  *See Clark v. Ecolab Inc.,* Nos. 07 Civ. 8623 (PAC), No. 04 Civ. 4488 (PAC), No. 06 Civ. 5672 (PAC), 2010 U.S. Dist. LEXIS 47036, at *17-18 (S.D.N.Y. May 11, 2010) ("Absent fraud or collusion, [courts] be should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement.'") (citation omitted); *In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 461 (S.D.N.Y. 2004) ("In addition to this presumption of fairness, great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.") (internal citations omitted).

Moreover, where, as here, the settlement is the by-product of a mediation or settlement conference before a an experienced mediator, there is a presumption of fairness and arms-length negotiations.  *See, e.g., deMunecas v. Bold Food, LLC*, No. 09 Civ. 00440 (DAB), 2010 U.S. Dist. LEXIS 38229, at *3 (S.D.N.Y. Apr. 19, 2010) ("The assistance of an experienced mediator, Ruth D. Raisfeld, reinforces that the Settlement Agreement is non-collusive."); *In re AOL Time Warner, Inc.*, 02 Civ. 8853 (SWK), 2006 U.S. Dist. LEXIS 70474, at *16 (S.D.N.Y. Sept. 27, 2006) ("In evaluating a settlement's procedural fairness, the Second Circuit has noted that 'a court-appointed mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure.'").  *See also Dorn*, 2011 U.S. Dist. LEXIS 11931at *2-3 ("The assistance of an experienced class action employment mediator . . . reinforces that the Settlement Agreements are non-collusive.").

### 2.    The Settlement Contains No Obvious Deficiencies.

The proposed settlement has no obvious deficiencies, and no segment of the class is favored in the settlement.

The settlement provides only a modest incentive award of $15,000 the Plaintiffs, who were instrumental in facilitating a resolution of this matter.  Incentive awards for time, effort, risk, and service do not improperly grant preferential treatment to class representatives.  Rather, "service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff."  *Khait*, 2010 U.S. Dist. LEXIS 4067 at *26 (approving awards of $15,000 and $10,000 for named plaintiffs in a wage and hour class action).  *See also, e.g. Willix v. Healthfirst, Inc.*, No. 07-Civ.-1143(ENV)(RER), 2011 U.S. Dist. Lexis 21102, at *19-20 (E.D.N.Y. Feb. 18, 2011) (approving $75,000 in service awards for five class representatives); *Torres v. Gristede's Operating Corp.*, Nos. 04 Civ. 3316 (PAC), 08 Civ. 8531 (PAC), No. 08 Civ. 9627 (PAC), 2010 U.S. Dist. LEXIS 139144, at *22 (S.D.N.Y. Dec. 21, 2010) (approving service awards totaling $225,000 for fifteen plaintiffs).

Finally, the settlement does not mandate excessive compensation for JK, which will apply for an award of attorneys' fees and costs equal to 33% of the settlement fund.

> In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award.  Where relatively small claims can only be prosecuted through aggregate litigation, "private attorneys general" play an important role.  Attorneys who fill the private attorney general role must be adequately compensated for their efforts. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk.  Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and the NYLL.

*Khait,* 2010 U.S. Dist. LEXIS 4067 at *22-23 (internal citations omitted).  A "[c]lass [c]ounsel's request for 33 1/3% of the Fund is reasonable and 'consistent with the norms of class litigation in this circuit.'" *Willix*, 2010 U.S. Dist. LEXIS 139137 at *17 (collecting cases).

### 3.     The Settlement Falls Within The Range Of Possible Approval.

As explained above, the Settlement Agreement was reached only after arms' length negotiations between the Parties and their counsel, who fully considered the advantages and disadvantages of continued litigation.   JK, which has a great deal of experience in the prosecution and resolution of wage and hour class actions, has carefully evaluated the merits of this case and the proposed settlement.   The Settlement Fund represents an appropriate recovery given the strengths and weaknesses of Plaintiff's and class members' claims and the risks and potential recovery if the case proceeds forward in litigation.

While JK and the Plaintiff remain confident that they would ultimately be successful at trial, they acknowledge that there are considerable risks.  There are numerous disputed issues of fact and law, including whether Defendants' tip pools and compensation policies violated New York law.   Further, much of the damages sought in this case are based upon Plaintiffs' allegations that Defendants did not properly compensate employees for all hours worked or pay the spread of hours premium when employees worked greater than ten hours per day.  However, as there no relevant time records for much of the Class Period, Plaintiffs would be required to establish the hours employees worked through testimony.   Therefore, the value of the claims

could be significantly impacted by the jury's assessment of the Plaintiffs' and Class Members' credibility. *Maley v. Del Global Techs. Corp*., 186 F. Supp. 2d 358, 365 (S.D.N.Y. 2002) (recognizing that a jury may award plaintiffs only a fraction of their alleged damages.) Accordingly, there are significant risks to Plaintiffs proceeding forward to trial.

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Khait,* at *18 (quoting, *Frank*, 228 F.R.D. at 186). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.  Cf. Detroit*, 495 F.2d at 455 n.2 ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."). "[A] 'settlement agreement achieved through good-faith, non-collusive negotiation does not have to be perfect, just reasonable, adequate and fair.'" *Dupler v. Costco Wholesale Corp*., 705 F. Supp. 2d 231, 246-47 (E.D.N.Y. 2010) (quoting, *Joel A. v. Guiliani,* 218 F.3d 132, 144 (2d Cir. 2000)).

For mediation, Plaintiffs calculated the actual and liquidated damages potentially recoverable by the Settlement Class to be approximately $645,300. Accordingly, the settlement fund of $446,500 amounts to a significant portion of the potential class-wide damages. Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the proposed settlement is very reasonable and falls within the range of possible final approval. Thus, the Court should grant preliminary approval of the Settlement Agreement and direct that notice of it be given to the Class.

### E.   The Proposed Plan Of Class Notice

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P.23(c)(2)(B).  *See also Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 175-76 (1974)  ("[E]ach class member who can be identified through reasonable effort must be notified that he may request exclusion from the action and thereby preserve his opportunity to press his claim separately or that he may remain in the class and perhaps participate in the management of the action.").

Rule 23(e)(1) similarly states, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by [a proposed settlement, voluntary dismissal, or compromise.]"  Fed. R. Civ. P. 23(e)(B).  "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness."  *Wal-Mart Stores,* 396 F.3d at 113 (internal citations omitted).  "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'"  *ld.* at 114 (internal citations omitted).

Here, the Claims Administrator will disseminate the Class Notice to all Class Members via first class mail at their last known addresses as maintained by Defendant.  For any notice returned to the Claims Administrator as undeliverable, the Claims Administrator will attempt a skip trace using the computer databases available and the information provided by Defendant.  Those individuals who are located using the skip trace will be re-mailed a copy of the Class

Notice.   Thus, the proposed method of distributing notice comports with Rule 23 and the requirements of due process.

As for the content of the Class Notice, Rule 23(c)(2)(B) specifies that:

The notice must concisely and clearly state in plain, easily understood language:

(i) the nature of the action;

(ii) the definition of the class certified;

(iii) the class claims, issues, or defenses;

(iv) that a class member may enter an appearance through an attorney if the member so desires;

(v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The Class Notice comports with the rule in all respects.   It describes the nature of Lawsuit, claims and defenses asserted, the terms of the settlement, the definition of the class, and the date and time of the Fairness Hearing.   Further, the Class Notice informs the class about the proposed allocation of attorneys' fees and incentive award for the Plaintiffs, provides that class members may retain separate counsel, discloses class members' right to exclude themselves from the settlement or object to any of its terms and specifies the deadline and procedure for doing so, and warns of the binding effects of the settlement on those persons who remain in the Settlement Class.   (Settlement Agreement, Ex. A.)   *See Willix,* 2010 U.S. Dist. LEXIS 139137 at *9 (approving notice where it "satisfies [the Rule 23(c)(2)(B)] requirements and adequately puts Rule 23 Class Members on notice of the proposed settlement").   *Cf. In re Michael Milken &*

*Assocs. Sec. Litig.,* 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally").

Therefore, in granting preliminary settlement approval, the Court should also approve the parties' proposed form and method of giving notice to the Class.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion for preliminary approval of the proposed settlement, conditional certification of the Settlement Class, and approval of the Class Notice.


Dated: New York, New York                    Respectfully submitted,
       April  24, 2013


                                             JOSEPH & KIRSCHENBAUM LLP


                                             __/s/ Matthew D. Kadushin_____
                                             Matthew D. Kadushin
                                             Michael D. Palmer
                                             233 Broadway, 5th Floor
                                             New York, NY 10279
                                             (212) 688-5640
                                             (212) 688-2548 (fax)

                                             *Attorneys for Plaintiff and the proposed*
                                             *settlement class*

26